Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the deputy commissioner with minor technical modifications as follows.
The Full Commission finds as fact and concludes as matters of law the following, which were agreed upon by the parties at the hearing before the deputy commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the Workers' Compensation Act and an employer-employee relationship existed between the parties.
2. Defendant is self-insured and Alexsis, Inc. is the servicing agent.
3. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment on January 19, 1993.
4. At the time of plaintiff's injury, his average weekly wage was $350.00.
5. Following the hearing, the parties stipulated to the introduction of the following records:
 (a) The job description from Jordan Lumber which was approved by Dr. Bynum on May 18, 1994.
(b) UNC-Chapel Hill records up to July 14, 1994.
 (c) Records from Dr. Richard Clark, Montgomery Surgical Associates.
 (d) Records from Dr. David DuPuy, Charlotte Orthopedic Specialists.
 (e) Records from Dr. Gurmukh Walha, Asheboro Orthopedic Clinic.
***********
The Full Commission adopts the findings of fact of the deputy commissioner and finds as follows
FINDINGS OF FACT
1. Plaintiff has an eleventh grade education and has a full scale I.Q. of 72.
2. Plaintiff's pre-injury duties with defendant included but were not limited to bark houseworker, loader operator, stick layer, stacker, gainsaw operator, mill cleanup and forklift operator.
3. On January 19, 1993, plaintiff was leaning over a hydraulic tank and was putting a lid on the tank. The operator of the hydraulic tank failed to realize that plaintiff was underneath the massive tank and allowed the tank and lid to fall across plaintiff's back and head.
4. As a result of the above-described incident, plaintiff received a crush injury to his scapula, multiple fractures of the scapula, vertebral body fractures of the thoracic spine, fractures of the right clavicle, ribs, right wrist, and an avulsed trapezoid and rhauboid muscle that required surgical reattachment. Prior to this injury, Mr. Moore had worked steadily for defendant since February 14, 1983.
5. Plaintiff was released to return to light duty work for four hours per day on March 15, 1993. His restrictions were no heavy use of the hand or arm and no heavy lifting. On March 24, 1993, the plaintiff was released to regular work.
6. On July 27, 1993, plaintiff was referred to Dr. Timothy N. Taft at the Orthopedic Clinic at UNC-Chapel Hill.
7. Upon examination and review of x-rays, Dr. Taft was of the impression that plaintiff had a disruption of the right scapula rhythm with shoulder abduction; weakness with active right shoulder abduction which was possibly due to a rotator cuff injury or muscular weakness; muscular spasms at mid-thoracic spine and right scapula; and a healed intra-articular left distal radius fracture. He recommended physical therapy for right rotator cuff strengthening, as well as cervical and right scapular stretching and strengthening exercises.
8. On August 11, 1993, plaintiff was seen by Dr. Scott Kelley for a repeat evaluation. Dr. Kelley had first seen plaintiff in the hospital. Dr. Kelley further recommended an MRI of the spine in the cervical and the thoracic regions, and EMG and nerve conduction studies.
9. The plaintiff continued working full time until September 1, 1993, when he was taken out of work again.
10. The MRI was performed on October 4, 1993 which showed no rotator cuff tear. It did, however, reveal detachment of the pericapsular muscles and a winging of the scapula.
11. Plaintiff was subsequently referred to Dr. Donald K. Bynum of UNC-Chapel Hill for evaluation. Upon examination, Dr. Bynum diagnosed plaintiff with winging of the scapula. He recommended surgery to reattach the pericapsular and paraspinous muscles.
12. At the request of the carrier an independent medical examination was performed by Dr. David DuPuy of Charlotte Orthopedic Specialists. Dr. DuPuy reviewed the previous medical records and upon examination, diagnosed plaintiff with chronic neck and back pain, and a fracture of the right scapula with muscle detachment. He was in agreement with the proposal for surgery.
13. Plaintiff underwent surgery on his right shoulder on December 17, 1993. The surgery was performed by Dr. Bynum to repair plaintiff's right parascapular muscle avulsions.
14. Following surgery plaintiff was referred to physical therapy. He also continued to follow up with Dr. Bynum.
15. On May 18, 1994, Dr. Bynum approved a cleaner position at Jordan Lumber Company for the plaintiff. On May 24, 1994, the plaintiff underwent a work capacity evaluation.
16. Plaintiff was notified through his attorney that a job had been located for him and that he was to return to work on June 6, 1994.
17. On May 25, 1994, plaintiff was seen by Dr. Elizabeth Bullitt at UNC-Chapel Hill for a neurosurgical evaluation at the referral of Dr. Ghia, the head of the anesthesia pain clinic. She performed a neurological evaluation.
18. Plaintiff failed to report for the job on June 6, 1994 for which defendant filed a Form 24. Three days later, June 9, 1994, plaintiff was seen again by Dr. Bynum with complaints of involuntary contractions in his upper back. Dr. Bynum recommended that the plaintiff stay out of work until he had undergone a neurological evaluation.
19. On June 20, 1994, plaintiff was seen by Dr. Colin Hall, a neurologist at UNC-Chapel Hill. Dr. Hall recommended another EMG which was performed on July 7, 1994. This study showed a movement disorder that best represented a tremor or disorder of motor unit control that appeared to originate from the Trapezius muscle. The co-firing of both Latissimus Dorsi muscles could not be explained by the tester.
20. The carrier scheduled a second independent medical evaluation with Dr. DuPuy to evaluate plaintiff's ability to return to work. This examination was scheduled for July 7, 1994.
21. Plaintiff refused to attend this evaluation without justification.
22. By Order of the Industrial Commission, however, plaintiff was seen for the second independent medical examination on October 13, 1994. Dr. DuPuy noted that plaintiff had extreme emotional overlay and a history of mental problems.
23. Upon examination, Dr. DuPuy found that plaintiff had a 4 + positive Waddel sign for symptom magnification, hypochondriasis, and significant emotional involvement. There were objective findings of scapular and parascapular fracture with muscle and nerve involvement. Dr. DuPuy's diagnosis was right scapula fracture with parascapular muscle and nerve involvement with subsequent surgery as well as a history of cervical strain with no evidence of specific nerve root involvement.
24. Dr. DuPuy's opinion as to plaintiff's capabilities to return to work were in direct contradiction to those opinions voiced by Dr. Bullitt, Dr. Hall and Dr. Bynum.
25. On November 11, 1994, Dr. DuPuy approved a cleaner position at Jordan Lumber. Both plaintiff and his attorney were notified by rehabilitation consultant Lynn Brinkley of the job offer. Plaintiff refused to return to employment with defendant.
26. On October 19, 1994, plaintiff again saw Dr. Bullitt. Dr. Bullitt found plaintiff's symptoms to be most consistent with a movement disorder. She could not, however, identify the specific movement disorder.
27. Approximately three months later, on February 21, 1995, plaintiff was seen by Dr. Thomas S. Baldwin for a vocational evaluation.
28. Dr. Baldwin reviewed depositions of Dr. Hall and of Dr. Bullitt. Dr. Baldwin agreed with their opinion, that plaintiff is not able to return to his former work or to do other jobs that exist in the national economy.
29. Dr. Baldwin opined that the job offered to plaintiff by defendant far exceeded plaintiff's physical capabilities due to plaintiff's constant pain and the non-function of his right hand.
30. Plaintiff was also examined by Dr. Colin Hall, surgical professor and Vice Chair of Neurology at the University of North Carolina at Chapel Hill. Dr. Hall also was of the opinion that plaintiff is unable to work. Dr. Hall's opinion is based on a combination of things including plaintiff's pain, the inability to use his right arm, and the significant emotional trauma plaintiff experienced as a result of his injury by accident.
31. Plaintiff also continues to experience a movement disorder of his upper back muscles or a "striking movement disorder." The muscle disorder manifests itself as a continuous, undulating movement that involves the muscles of the right half of the upper back.
32. Plaintiff also experiences poor sleep habits, has nightmares of the accident and is clinically depressed as a result of his injury by accident of January 19, 1993. Dr. Hall diagnosed these symptoms as post-traumatic stress syndrome.
33. Plaintiff continues to seek mental health counseling which is related to his clinical depression caused by the injury by accident of January 19, 1993.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
CONCLUSIONS OF LAW
1. On January 19, 1993, plaintiff sustained an admitted injury by accident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff, as a result of his injury by accident of January 19, 1993, was temporarily totally disabled as of September 1, 1993 and continues to be temporarily totally disabled and is entitled to compensation of $233.35 per week from September 1, 1993 and continuing until further order of the Industrial Commission, except for the period from July 7, 1994 through October 13, 1994. N.C. Gen. Stat. § 97-29.
3. Plaintiff was not justified in refusing the independent medical examination and is, therefore, not entitled to temporary total disability compensation for the period of July 7, 1994 through October 13, 1994. N.C. Gen. Stat. § 97-27.
4. Plaintiff, as a result of his continuing temporary total disability, was justified in refusing employment with defendant as a cleaner. N.C. Gen. Stat. § 97-32.
5. Medical treatment received by plaintiff as a result of his January 19, 1993 injury by accident was reasonably required to effect a cure, give relief, and/or will tend to lessen the period of plaintiff's disability. N.C. Gen. Stat. § 97-2 (19).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant shall pay plaintiff, on account of plaintiff's injury by accident of January 19, 1993, temporary total disability compensation at the rate of $233.35 per week, beginning September 1, 1993 and continuing until further Order of the Industrial Commission. However, plaintiff is to be paid no workers' compensation benefits for the period of July 7, 1994 through October 13, 1994. Amounts of temporary total disability compensation which have accrued shall be paid plaintiff in a lump sum, uncommuted, subject to an attorney fee described below.
2. Defendant shall pay for all medical treatment incurred, or to be incurred, as a result of plaintiff's compensable injury by accident of January 19, 1993, as long as said treatment is reasonably required to effect a cure, give relief, or tends to lessen plaintiff's period of disability.
3. A reasonable attorney fee of twenty-five percent of the compensation benefits due under Paragraph 1 of this AWARD is approved for plaintiff's attorney. Of the accrued amount payable in a lump sum to plaintiff, defendant shall deduct twenty-five percent and forward that amount directly to plaintiff's counsel. For the balance of the attorney fee, defendant shall forward every fourth compensation check directly to plaintiff's counsel.
4. Defendant shall pay the costs, including an expert witness fee of $750.00 to Dr. Colin Hall; an expert witness fee of $500.00 to Dr. David DuPuy; and an expert witness fee of $250.00 to Dr. Thomas Baldwin.
************
IT IS HEREBY ORDERED that plaintiff shall cooperate with any reasonable request by the defendant concerning vocational rehabilitation.
 S/ _________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________ THOMAS J. BOLCH COMMISSIONER
S/ _________________ LAURA K. MAVRETIC COMMISSIONER
BSB:be